## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JILL MARTINEZ,

        Plaintiff,

    vs.                            No.  1:20-cv-01240-WJ-SCY

NORTHERN ARIZONA UNIVERSITY,

        Defendant.

## MEMORANDUM OPINION AND ORDER DISMISSING PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FOR LACK OF PERSONAL JURISDICTION

THIS MATTER comes before the Court upon Defendant Northern Arizona University's ("NAU" or the "University") Motion to Dismiss or, Alternatively, Transfer Venue, filed May 6, 2021 (**Doc. 20**). The Court finds that the Motion, to the extent it argues that NAU is not an entity subject to suit and that Plaintiff has failed to establish that personal jurisdiction exists, is well-taken and therefore the requested dismissal is GRANTED. For the reasons discussed below, the Court finds that NAU is a non-jural entity incapable of being sued and that the Court lacks personal jurisdiction over NAU. Therefore, Plaintiff's complaint must be DISMISSED WITHOUT PREJUDICE.

### Background

### I.    Underlying Facts

This lawsuit arises out of Plaintiff Jill Martinez's employment with NAU, which roughly corresponds to the period she spent as a student at the University, Winter 2011 through Spring 2016. *See* Doc. 20-1 (Wischmeier Decl.); Doc. 20-2 (Warden Decl.); Doc. 20-3 (Gordon Decl.). Ms. Martinez worked in the University's Personalized Learning department, where she

transitioned from a student employee to a part-time temporary employee. *See* Docs. 20-2 & 20-3. In her declaration, Ms. Martinez's supervisor, Dr. Corrine Gordon, states that Ms. Martinez's employment with NAU was terminated on September 14, 2016 due to poor performance and a failure to improve. Doc. 20-3 ¶¶ 19–21.

When applying for admission to study at NAU, Ms. Martinez represented to the University that she was living in Tucson, Arizona. Doc. 20-1 ¶ 4. Ms. Martinez enrolled for online and in person classes, with the latter being conducted at the Tucson NAU campus. *Id.* ¶¶ 5–7. According to her enrollment verification, the last time Ms. Martinez registered for an in person course was for the Spring 2015 semester. *Id.* ¶ 8. After the Spring 2016 semester, Ms. Martinez did not register for any additional courses with NAU. *Id.* ¶ 9.

On October 31, 2014, NAU hired Ms. Martinez as a student employee in the Personalized Learning department. Doc. 20-2 ¶ 3. Ms. Martinez's student employment ended on August 23, 2015 because she was not taking a sufficient number of credits to qualify as a student employee. *Id.* ¶ 4. However, due to business needs, and on the recommendation of Dr. Corrine Gordon, NAU hired Ms. Martinez as a part time temporary employee in the Personalized Learning department, beginning on August 24, 2015, the day after her student employment ended. *Id.* ¶ 5. In her declaration, Dr. Gordon, Ms. Martinez's supervisor, states that she recommended Jill Martinez be hired as an employee because the other candidate for the position was living out of state, and hiring that candidate would have violated NAU's policy against hiring out of state employees without special permission. Doc. 20-3 ¶ 4. Further, Dr. Gordon states that neither she nor NAU recruited Ms. Martinez for the position. *Id.* ¶ 13. Rather, another student recommended Ms. Martinez to Dr. Gordon for the position. *Id.* At the time Ms. Martinez was hired as an employee, it was Dr. Gordon's understanding that Ms. Martinez was living in Arizona. *Id.* ¶ 6. In this position, Ms.

Martinez worked for no more than nineteen hours per week and her job duties focused primarily on assessing students' work, tutoring, and assisting with some enhancements to course materials and resources. *Id.* ¶¶ 8–9. The job was a remote work position—Ms. Martinez did not have in person job duties and she exclusively worked remotely, assisting students via telephone, instant messaging, email, threaded discussions, group discussions, and message boards. *Id.* ¶¶ 10–12. Dr. Gordon did not know that Ms. Martinez might be residing outside of Arizona until 2016, when Ms. Martinez told Dr. Gordon that she was in New Mexico, and even at that point Dr. Gordon was under the impression that Ms. Martinez still maintained a residence in Arizona. *Id.* ¶¶ 14–15. Dr. Gordon received complaints from students regarding Ms. Martinez's performance. *Id.* ¶¶ 19–20. On September 14, 2016, NAU terminated Ms. Martinez's employment, allegedly due to this poor performance. *Id.* ¶ 21. NAU sent Ms. Martinez's last paycheck to her address in Arizona, but, on October 10, 2016, Ms. Martinez contacted NAU and reported that she had not received her final paycheck. Doc. 20-2 ¶ 7. NAU stopped payment on the reported check and sent Ms. Martinez a replacement check using FedEx for overnight delivery to her address on file in Prescott, Arizona only to learn that delivery of the reissued check could not be completed because the recipient, Ms. Martinez, had moved. *Id.* ¶¶ 8–9. To remedy the situation, NAU sent Ms. Martinez an email asking her to provide her current address, to which Ms. Martinez responded by providing an address in New Mexico. *Id.* ¶¶ 10–11. When reviewed, Ms. Martinez's 2015 and 2016 W-2 Forms both reflected addresses in Arizona.

On January 18, 2017, Ms. Martinez filed a Charge of Discrimination with the Arizona Attorney General's Office, Civil Rights Division and the EEOC. Doc. 20-4. The Charge alleges that NAU discriminated against Ms. Martinez based on her disability and engaged in some form

of retaliation. *Id.*[1]

## II.      Plaintiff's Original Complaint

On November 30, 2020, Ms. Martinez filed a *pro se* complaint against the University using a form entitled "Civil Rights Complaint Pursuant to 42 U.S.C. § 1983." Doc. 1 (the "original complaint"). The original complaint contains allegations that Ms. Martinez was "discriminated and retaliated against" by the University "as a student and employee from 2013–2018[2] in violation of the Americans with Disabilities [A]ct of 1990, as amended, and the Rehabilitation [A]ct of 1973." *Id.* at 2. Ms. Martinez further alleged that:

> In essence Northern Arizona University denied accommodations that were reasonable and necessary, retaliated by giving me grades lower than I earned (I appealed these grades and won on 2 occasions), denied accommodation previously provided, used my ability to work as a reason to deny accommodation recommended by my medical team and then terminated my employment when I reported it to H[R].

*Id.* at 3. Where the Form requested explanation in the "Supporting Facts"[3] section, Ms. Martinez

---

[1]      Ms. Martinez's Charge states the following particulars:

On or around October 31, 2014, I was hired as a Subject Matter Faculty Member.

I am a person with (a) medical condition(s) that substantially limit(s) (a) major bodily function(s) and/or major life activities for which I made my employer aware.

During the course of my employment, I performed well and have not documented record of behavior or performance issues. However, on or around September 14, 2016, I was advised that my employment was being terminated.

I believe that I was subjected to unlawful discrimination in violation of the Americans with Disabilities Act of 1990, as amended.

Doc. 20-4.

[2]      The Court agrees with NAU that the reference to 2018 as the end date of Ms. Martinez's employment is incorrect, as she acknowledged in her sworn EEOC Charge that her employment was terminated in 2016. *See* Doc. 20-4.

[3]      The "Supporting Facts" section of the Form includes a parenthetical explanation –"Include all facts you consider important, including names of persons involved, places and dates. Describe exactly how each defendant is involved. State the facts clearly in your own words without citing legal authority or argument."

wrote:

> I don't understand this question and don't feel qualified to answer it. That said, I reported the issue to HR and was terminated. The reason given for the termination was a fabrication. I have hundreds of emails and documents to prove discrimination and retaliation, but don't know which to include. A comprehensive document including all this information would require months to compile.

*Id.* The Court found that the original complaint failed to state a claim upon which relief could be granted because it failed to state with particularity the alleged discrimination and retaliation and failed to put forth factual allegations showing the Court has personal jurisdiction over the University. Doc. 4 at 3. Consequently, the Court ordered Ms. Martinez to file an amended complaint. *Id.* at 4–5.

After the order was issued, Ms. Martinez sent an *ex parte* communication to the Court on December 13, 2020. *See* Doc. 5. In this email, Ms. Martinez states, in relevant part, "[s]ince I can't find an attorney and the questions are procedural, I'm hoping you or the judge could answer them." *Id.* One of the questions posed in this email is "[c]an I add the Board of Regents and the EEOC to the Complaint since I reported the violations to them and they did nothing or would those need to be brought in another complaint?" *Id.* The following day, United States Magistrate Judge Steven C. Yarbrough issued an Order Regarding Plaintiff's Letter with Questions, stating in relevant part that:

> The Court, including Clerk's Office staff, cannot give advice on how to prosecute a case. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant"); *Biogenics, Inc. v. Kazen*, 6 Fed.Appx. 689, 692 (10th Cir. 2001) ("the court will not construct arguments or theories for a pro se litigant").

Doc. 6 at 1. This order and subsequent responses from the Court informed Ms. Martinez that it could not give her legal advice, but rather she was "responsible for educating [herself] in the law that applies. . . including all applicable federal and local rules of procedure." Doc. 7.

### III.   Plaintiff's First Amended Complaint ("FAC"), Second Amended Complaint ("SAC"), and Other Relevant Procedural History

In response to the Court order, Ms. Martinez filed *pro se* her First Amended Complaint ("FAC") on February 1, 2021 using the same 1983 Form. Docs. 9 & 10. The FAC's Jurisdiction section names NAU, a citizen of Flagstaff, Arizona as a defendant. Ms. Martinez also typed the question "can I name the Governor and Board of Regents?" in a blank line in the next available field for listing a defendant. Doc. 9 at 2.  The FAC goes on to allege jurisdiction pursuant 28 U.S.C. §1343(3) and 42 U.S.C. §1983 and asserts four claims: violation of Title II of the Americans with Disabilities Act ("ADA"), denial of reasonable accommodations, false advertising, and a Family Educational Rights and Privacy Act ("FERPA") violation. *Id.* at 2–4.

After filing the FAC, Ms. Martinez made her first motion to court appointed counsel, which the Court denied. Docs. 12 & 13.[4] On February 12, 2021, Ms. Martinez, without seeking leave of the Court,[5] filed a Second Amended Complaint ("SAC"). Doc. 14. The SAC reiterates the query of "can I name the Governor and Board of Regents [as defendants]?" *Id.* at 2. The SAC contains only three claims. Count I contains an allegation of "False Advertising" but fails to provide any supporting facts.[6] For Count II, Ms. Martinez alleges she was denied accommodations provided in

---

[4]      After this, Ms. Martinez made two subsequent requests for court appointed counsel in this case, both of which were denied. *See* Docs. 15, 17, 23, and 24. In its most recent denial, the Court made a note of outlining the obstacles it would face were it to appoint an attorney in this case, namely its inability to require an unwilling attorney to engage in uncompensated representation of an indigent civil litigant. *See* Doc. 24 at 1 ("Congress has not provided any mechanism, process, or funds to pay appointed counsel.") (citing 28 U.S.C. § 1915(e)(1)).

[5]      Federal Rule of Civil Procedure 15 required Ms. Martinez to seek leave of the Court before filing another amended complaint. Fed. R. Civ. P. 15(a)(2). At this point, however, the Court will not strike the SAC for failure to comply with the governing Rule.

[6]      Although not dispositive to the Court's dismissal of this case, the Court does note that Ms. Martinez filed an Appendix/Supplement along with her FAC. *See* Doc. 10. This document sets forth supporting facts for her allegation of "false advertising" but does not provide any legal authority for this claim. *Id.* at 2. The Court is aware that, as NAU argues in its Motion, the SAC, if found to be the operative complaint, would supersede the FAC. Since the Court is not striking the SAC, the question of to what extent the Court should consider this Appendix/Supplement arises. However, such a consideration is not necessary given that this Memorandum Opinion and Order's ruling that Ms.

previous semesters and that "instructors retaliated by giving [her] grades lower than [she] earned." *Id.* at 3. For Count III, Ms. Martinez alleges the University "used [her] ability to work in an at[t]empt to redefine [her] status as disabled and a reason to deny accommodation as a student" and then terminated her after she reported this conduct to HR. *Id.* at 4. The SAC abandons the FERPA claim.

On May 6, 2021, NAU filed the instant Motion, seeking dismissal of this case on the following grounds: (1) Plaintiff did not effectuate service on the University; (2) the University is a non-jural entity incapable of being sued; (3) the Court lacks personal jurisdiction over the University; (4) venue in New Mexico is not proper; and (5) Plaintiff's complaints do no adequately describe her claims or the elements thereof and her claims are time barred or otherwise fail as a matter of law. *See* Doc. 20. The Court will address only arguments (2) and (3), as they offer the most compelling grounds for dismissal of this case. This Memorandum Opinion and Order will not discuss the merits of the claims Ms. Martinez brings.

The Court accommodated Ms. Martinez's requests for an extension of time to respond to this Motion. *See* Docs. 22, 24, 25, and 26. However, the August 2, 2021 deadline passed without a response being placed on the docket. Thus, in testing the sufficiency of the Motion's request and determining whether NAU has met its burden for dismissal of this case, the Court will not have the benefit of considering Ms. Martinez's arguments on this matter. However, the Court will not consider the failure to respond as an independent basis for dismissal, as NAU is not prejudiced by this failure, the failure does not interfere with the judicial process, and Ms. Martinez has a low degree of culpability given her unfamiliarity with the procedural rules and norms of the federal forum. *See Miller v. Dep't of Treasury*, 934 F.2d 1161, 1162 (10th Cir. 1991) (in determining

---

Martinez fails to state any claim upon which relief could be granted rests upon the legal reality that NAU is a entity incapable of being sued rather than the particulars of any claim she brings before the Court.

whether to dismiss for failure to file a responsive pleading, district courts must consider: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; and (3) the culpability of the litigant) (citing *Hancock v. City of Oklahoma City*, 857 F.2d 1394 (10th Cir. 1988)).

## Legal Standard

Ms. Martinez's status as a *pro se* litigant means that her pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21, (1972)). At the same time, it is not the proper function of the Court to assume the role of advocate for a *pro se* litigant. *Hall*, 935 F.2d at 1110; *see also Biogenics, Inc. v. Kazen*, 6 Fed.Appx. 689, 692 (10th Cir. 2001) ("the court will not construct arguments or theories for a pro se litigant"). The Court has a practice of informing *pro se* litigants that they are generally held to the same professional responsibility as trained attorneys and it is their responsibility to become familiar with the federal and local rules of civil procedure. *See* Guide for Pro Se Litigants at 4, United States District Court, District of New Mexico (November 2019); *cf.* Doc. 6 at 1–2 (quoting this section of the Guide for Pro Se Litigants).

The Supreme Court has explained that "to withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While the 12(b)(6) standard does not require that [Ms. Martinez] establish a prima facie case in [her]

complaint" the Court must still determine whether she has stated causes of action, which if sufficiently proven, would entitle her to relief. *Khalik*, 671 F.3d at 1192. As noted above, this determination depends on a review of Arizona law governing suits against public universities such as NAU.

Additionally, even if Ms. Martinez were to plead plausible claims, dismissal without prejudice would still be appropriate if the Court finds that it lacks personal jurisdiction over the defendant. District courts "presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." *Clark v. Roche*, No. 03-CV-0666-LH-ACT, 2004 WL 7337502, at *1 (D.N.M. Oct. 28, 2004). When reviewing an attack under Rule 12(b)(2), the Court will look at whether the plaintiff has met her burden to establish jurisdiction. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc*., 514 F.3d 1063, 1069 (10th Cir. 2008) (plaintiffs bear the burden of establishing personal jurisdiction) (internal citation omitted). When, as in this case, the Court decides not to conduct an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of personal jurisdiction to defeat the motion." *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). There are two distinct types of personal jurisdiction: general (all-purpose jurisdiction) and specific (case-linked jurisdiction). *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, nn. 8, 9, (1984)). The Court will address only the latter form of personal jurisdiction.[7] Generally, "a plaintiff must show that jurisdiction is legitimate

---

[7]     Ms. Martinez does not specify which of the two categories of personal jurisdiction are present in this case. However, the allegations of jurisdiction contained in the FAC and SAC show the Court that any assertion of general jurisdiction would fail. For a foreign entity, general jurisdiction exists only if the entity's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citations omitted); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 & n. 9 (1984); *Crow Law Firm, Inc. v. Rogers*, No. 18-CV-808 MV-KK, 2019 WL 1318342, at *4 (D.N.M. Mar. 22, 2019). Ms. Martinez has not made any showing that NAU is "essentially at home" in New Mexico, and therefore the Court will limit its review of her jurisdictional allegations to the framework of case-specific jurisdiction.

under the laws of the forum state and that exercise of jurisdiction does not offend the due process

clause of the Fourteenth Amendment." *Soma Med. Int'l*, 196 F.3d at 1295 (quoting *Far West*

*Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)). New Mexico's long-arm statute

"extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible."

*Tercero v. Roman Catholic Diocese*, 2002-NMSC-018, ¶ 6, 48 P.3d 50, 54 (N.M. 2002). Thus, the

Court need only conduct a due process analysis. *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159,

1166 (10th Cir. 2011). The Due Process Clause authorizes personal jurisdiction where (1) a

defendant has purposefully established minimum contacts within the forum state, and (2) where

the exercise of personal jurisdiction comports with traditional notions of fair play and substantial

justice. *See Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 (10th Cir.

2020).

## Discussion

### I.      Pursuant to Arizona Law, NAU is a Non-Jural Entity Incapable of Being Sued

As a preliminary matter, the Court finds that Ms. Martinez named only one defendant in

this case: NAU.[8] The University contends that it is not an entity subject to suit. In Arizona, the

powers of any agency are defined by the statutes creating it. *Ayala v. Hill*, 136 Ariz. 88, 90, 664

P.2d 238, 240 (Ct. App. 1983). As this general rule relates to an agency being sued, the statutes

creating the entity must provide the agency with the power to sue and be sued. *Kimball v. Shofstall*,

17 Ariz. App. 11, 13, 494 P.2d 1357, 1359 (Ct. App. 1972) (A governmental entity is non-jural

when "[n]either the constitution nor the statutes provide that [it] is an autonomous body with the

---

[8]      The scope of the liberal construction given to Ms. Martinez's *pro se* pleadings is not wide enough to accommodate an interpretation that the question "can I name the Governor and Board of Regents?" constitutes an instance of Ms. Martinez amending her complaint to add these two parties as defendants. Indeed, it is readily apparent that neither the Governor nor ABOR has been served a copy of the summons and amended complaint. *See* Fed. R. Civ. P. 4.

right to sue and to be sued."). Arizona Revised Statute § 15-1601 authorized the establishment of Northern Arizona University, but it did not grant the University the power to sue or be sued. The Arizona Board of Regents ("ABOR") is a corporate body empowered by the Arizona state legislature to govern Arizona's public universities. *Ansel Adams Publ'g Rights Tr. v. PRS Media Partners, LLC*, No. C-10-03740-JSW, 2011 WL 1585069, at *2 (N.D. Cal. Apr. 27, 2011). As such, ABOR "has jurisdiction and control over the universities." A.R.S. § 15-1625(A). The operative statute provides that ABOR, as the governing body for Arizona's public universities, is the proper defendant for all actions that could have been brought against NAU. *Id.* at § 15-1625(B)(3). Thus NAU, like other public universities in Arizona, cannot be sued in its own name. *See Lazarescu v. Ariz. State Univ.*, 230 F.R.D. 596, 601 (D. Ariz. 2005) ("The effect of Arizona Revised Statutes §§ 15-1601 and 15-1625 is clear. Arizona State University cannot be subject to suit because the Arizona Legislature has not so provided. However, [ABOR] is an entity subject to suit pursuant to § 15-1625."); *see also Alozie v. Arizona Bd. of Regents*, 431 F. Supp. 3d 1100, 1105 n.1 (D. Ariz. 2020) ("Arizona State University is a non-jural governmental entity; the Arizona Board of Regents is the entity subject to suit pursuant to A.R.S. § 15-1625(B)(3).") (citing *Krist v. Arizona*, No. 17-CV-2524-PHX-DGC, 2018 WL 1570260, at *2–3 (D. Ariz. Mar. 30, 2018)). The Court dismisses the claims against NAU because Ms. Martinez has not shown that it is a jural entity separate from ABOR.

## II.    Even if Plaintiff had Named as Defendant an Entity Capable of Being Sued, She has not Established that this Court has Personal Jurisdiction in this Case

Both of Ms. Martinez's amended complaints contain virtually identical sets of facts supporting personal jurisdiction.[9] Ms. Martinez's allegations, which will be taken as true, indicate

---

[9]    The SAC reiterates the facts found in the Jurisdiction section of the FAC verbatim, but omits "In addition, I was living in New Mexico at the time of the violations (2013 to present) and moving the case to Arizona would likely prove to be an insurmountable hardship due to my disability." *See* Doc. 14 at 2.

that:

> Northern Arizona University 1) actively recruits students from New Mexico by[]
> maintaining a webpage that includes a list of recruiters for New Mexico; [and]
> attending college fairs in New Mexico with the intention of recruiting students from
> New Mexico high schools [;] 2) has students attending online while residing in New
> Mexico [;] 3) funds research for the State of New Mexico [; and] 4) solicits funds
> from alumni living in New Mexico via the NAU Foundation. (5) In addition, I was
> living in New Mexico at the time of the violations (2013 to present) and moving
> the case to Arizona would likely prove to be an insurmountable hardship due to my
> disability.

Doc. 9 at 2. Returning to the Tenth Circuit's *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*

standard, the Court will examine whether this case presents the required minimum contacts with

New Mexico and whether the exercise of personal jurisdiction comports with traditional notions

of fair play and substantial justice. 946 F.3d 1223, 1229 (10th Cir. 2020).

   *A. Plaintiff has not sufficiently established that "minimum contacts" exist*

   In making a finding of whether minimum contacts exist, a court considers whether the

defendant "purposefully availed" itself of the privilege of conducting business in the forum state

or "purposefully directed" actions toward residents of the forum state. *Segovia v. Rodriguez*, No.

2:17-CV-00609-BRB-GBW, 2017 WL 4480131, at *2 (D.N.M. Oct. 6, 2017) (citing *Burger King

Corp. v. Rudzewicz*, 471 U.S. 462, 473–74 (1985)). Minimum contacts exist only if (1) the

defendant purposefully directed activities at residents of the forum, <u>and</u> (2) the plaintiff's claim

arises out of, or results from, the defendant's actions, which create a substantial connection with

the forum state. *Arnold v. Grand Celebration Cruises, LLC*, No. 17-CV-685-JAP-KK, 2017 WL

3534996, at *2 (D.N.M. Aug. 16, 2017) (emphasis added) (citing *OMI Holdings, Inc. v. Royal Ins.

Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)). These requirements ensure that a defendant

"will not be subject to the laws of a jurisdiction solely as a result of random, fortuitous, or

attenuated contacts,"; "the unilateral activity of another party or a third person,"; or foreseeability

that its actions may cause injury in that jurisdiction. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840–41 (10th Cir. 2020). In particular, "[t]he arising-out-of component of the test requires courts to ensure that there is an adequate link between the forum State and the claims at issue, regardless of the extent of a defendant's other activities connected to the forum. *Id.* at 840 (citing *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1781 (2017)). Courts in this District have held that in order to demonstrate purposeful availment, a plaintiff must present evidence of an intentional action expressly aimed at the forum with knowledge that the brunt of the injury would be felt there. *Raffle v. Executive Aircraft Maint.*, 831 F. Supp. 2d 1261, 1266 (D.N.M. 2011).

Here, Ms. Martinez fails to establish the required connection between NAU and New Mexico. All facts presented in her amended complaints that allegedly support personal jurisdiction over the University relate to NAU's broad contacts with New Mexico, which are inapplicable to Ms. Martinez's case because she resided in Arizona, or at least represented that she resided in Arizona, until after the alleged harm ceased (i.e., her September 14, 2016 termination of employment).[10] Here, the University was not even aware that Ms. Martinez could possibly be located in New Mexico until 2016 when she told Dr. Gordon that she was in the state and, later, when she asked for her last paycheck to be sent to an address in New Mexico.

Further, irrespective of when Ms. Martinez relocated from Arizona to New Mexico or when the University discovered this move, this represents a unilateral action on the part of Ms. Martinez. If the actions of a plaintiff unilaterally establish a defendant's contact with the forum state, then it would be exceedingly difficult to find that NAU "purposely" availed itself to the authority of the

---

[10]     The FAC pleads that the alleged violations are continuing. *See* Doc. 9 at 2 (stating the violations encompass a period of "2013 to present"). However, this does not comport with her requested relief. Ms. Martinez does not seek reinstatement as a student or employee, although she does allege that she is entitled to future wages. *See id.* at 5; Doc. 14 at 5.

District of New Mexico for presiding over Ms. Martinez's claims. *See Sanchez v. State Farm Fire & Cas. Co.*, No. 14-CV-0433-MCA-RHS, 2015 WL 12864232, at *9 (D.N.M. Mar. 31, 2015) (under the purposeful availment rule, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.") (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Jurisdiction might be proper if Ms. Martinez could show that NAU itself created contacts with her outside of Arizona. *See Burger King Corp.*, 471 U.S. at 475 ("Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State.") (internal citations omitted). Ms. Martinez cannot make this showing. Her term as a student with NAU began with in person classes on the NAU Tucson campus and she registered under an Arizona address. *See* Doc. 20-1. Later, likely around October 31, 2014, Ms. Martinez submitted an application for employment representing that she lived in Arizona and this residency was reflected in her 2015 and 2016 W-2 Forms. *See* Doc. 20-2. From that point forward, until 2016, Ms. Martinez did not indicate to NAU or its agents that she was located outside of Arizona. *See* Doc. 20-3. It was not until after Ms. Martinez's termination and withdrawal from her studies at NAU that the record shows NAU becoming aware that she had been located outside of Arizona for some undetermined amount of time.

Even if, *arguendo*, the Court found that NAU's knowledge of Ms. Martinez's out of state location was irrelevant to the minimum contacts analysis, Ms. Martinez would still face other challenges in establishing personal jurisdiction. First, to the extent her pleadings refer to websites, the Court notes that simply placing information on the internet is insufficient to create personal jurisdiction. *XMission*, 955 F. 3d at 845–46; *see also Sportschannel New England Ltd. P'ship v. Fancaster, Inc.*, No. 09-CV-11884-NG, 2010 WL 3895177, at *7 (D. Mass. Oct. 1 2010) ("[A]

website with . . . registration page, simple trivia, ability to email the website operators, stream-line video and 'fan' or 'share' a page or video, cannot be sufficient to enable the site's owners to be haled into court in any forum in which it's accessible"). Likewise, phone calls, emails, and other forms of communications with the University do not demonstrate purposefully directed efforts at New Mexico in this case. *See Dental Dynamics*, 946 F.3d at 1231 (10th Cir. 2020) (text messages with resident of forum not sufficient). Second, NAU presents a plethora of cases where federal district courts across the country have held that correspondence courses and remote work situations, without evidence of specific out of state recruitment of the plaintiff, do not support a finding of minimum contacts. *See Chase v. Gist*, No. 12-CV-40020-FDS, 2012 WL 1581682, at *6 (D. Mass. May 3, 2012) (finding no personal jurisdiction by virtue of plaintiff's participation in university's distance-learning program because the program was not directed at the forum state any more than it was a the world at large); *Kuan Cheng v. U.S. Sports Acad., Inc.*, No. CV 18-CV-12533-FDS, 2019 WL 1207863, at *8 (D. Mass. Mar. 14, 2019) (Alabama university's enrollment of a Massachusetts student in an online program did not create personal jurisdiction);[11] *Fields v. Sickle Cell Disease Ass'n of Am., Inc*., 376 F. Supp. 3d 647, 652-54 (E.D.N.C. 2018) (granting motion to dismiss for lack of personal jurisdiction where plaintiff telecommuted, no meetings were held in forum, no employees traveled to forum to work with plaintiff, and plaintiff initiated contact with defendant by inquiring about possible employment and noting that plaintiff's choice to complete her work in the forum state for her own reasons is a unilateral decision that cannot be fairly attributed to the defendant as an attempt to avail itself of the privilege of conducting business

---

[11] The facts in *Kuan Cheng* are very similar to the case at hand. The opinion notes "[plaintiff] only moved to Massachusetts after enrolling in USSA and completing several years' worth of coursework, all while living in Alabama. . .[i]ndeed, there is nothing in the present record to suggest that USSA was aware that [plaintiff] was living in Massachusetts at the time of the present communications and his subsequent re-enrollment." 2019 WL 1207863, at *8.

in the forum state); *Gonzalez v. US Human Rights Network*, No. 20-CV-00757-PHX-DWL, 2021 WL 86767, at \*10 (D. Ariz. Jan. 11, 2021) (no jurisdiction for remote work); *Perry v. Nat'l Ass'n of Home Builders of United States*, No. CV TDC-20-0454, 2020 WL 5759766, at \*5 (D. Md. Sept. 28, 2020) (in remote work case, defendant's knowledge that an employee resided in the forum state and conducted work from home did not constitute purposeful availment); *Bertolini-Mier v. Upper ValleyNeurology, P.C.*, No. 5:16-CV-352017, WL 4081901, at \*5 (D. Vt. Sept. 13, 2017) (employer's knowledge and facilitation of remote work was "not a purposeful effort" to have the work conducted in the forum); *Listug v. Molina Info Sys., LLC*, 2014 WL 3887939, at \*3 (D. Minn. Aug. 8, 2014) ("[T]he record shows that Plaintiff was permitted, but not required, to work from home in Minnesota on occasion. Plaintiff's decision to work from home in Minnesota does not confer jurisdiction."). Any University contacts alleged by Ms. Martinez, taken as true, constitute a less-than-minimal connection to New Mexico and do not show that the University, from the State of Arizona, purposely directed its activities at New Mexico. The Court finds that Ms. Martinez has not made a *prima facie* showing of jurisdiction.

B. *Factors pertaining to the "Fair Play and Substantial Justice" analysis weigh in favor of Defendant*

Further, even if Ms. Martinez could establish minimum contacts in this case, the Court finds that exercising personal jurisdiction over NAU would not comport with traditional notions of fair play and substantial justice. Under Tenth Circuit precedent, the Court considers: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) Plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 909 (10th Cir. 2017). There is undoubtedly a strong interest in resolving this dispute in

Arizona because Ms. Martinez's claims could potentially subject the State of Arizona to liability. Moreover, the most efficient resolution of this dispute would likely occur in Arizona, where all of NAU's documents and virtually all of its witnesses are located. Indeed, the record also reflects that for the vast majority of her time as a student and worker at NAU, Ms. Martinez maintained an Arizona residence and, very likely, was actually present in the state.[12]

**Conclusion**

**Therefore,** for the reasons discussed in this Memorandum Opinion and Order, Defendant Northern Arizona University's Motion to Dismiss is hereby GRANTED pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). The request for transfer to the District of Arizona is rendered MOOT. Accordingly, all claims brought in this case are DISMISSED WITHOUT PREJUDICE. A final judgment shall issue separately.

**IT IS SO ORDERED.**

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[12] The Court assumes some degree of physical presence in Arizona because the record strongly suggests that, until October 2016, Ms. Martinez was able to retrieve her paychecks, which were sent to addresses in Arizona. *See* Doc. 20-2.